**Richard Lee ALFORD,
Petitioner–Appellant,**

**v.**

**Tom ROLFS, Respondent–Appellee.**

No. 87–3919.

United States Court of Appeals,
Ninth Circuit.

Argued Feb. 3, 1988.

Submitted July 12, 1988 \*.

Decided Feb. 9, 1989.

---

\* Submission in this case was deferred pending the filing of a joint report by the parties.

Barbara A. Laners, Seattle, Wash., for petitioner-appellant.

Theresa L. Fricke, Asst. Atty. Gen., Dept. of Corrections, Olympia, Wash., for respondent-appellee.

Before FLETCHER, LEAVY**, Circuit Judges, and CARROLL***, District Judge.

LEAVY, Circuit Judge:

This is an appeal from a district court decision denying Alford's petition for federal habeas corpus relief. Alford was convicted in the State of Washington for possessing stolen property. Based on Alford's felony record, the Washington trial court found Alford to be an habitual criminal, and sentenced him to life in prison with possibility of parole. The Washington Court of Appeals first vacated the sentence, but, in a clarifying decision, upheld the habitual criminal finding and life sentence. Alford sought habeas corpus relief in the United States District Court after exhausting his state remedies. The district court denied the petition. We affirm.

## FACTS

In November 1978, a jury found petitioner Richard Lee Alford guilty of possessing stolen property worth approximately $17,000, a felony. At the time of Alford's

** Judge Leavy was drawn to replace Judge Anderson, now deceased. He has read the briefs, reviewed the record, and listened to the tapes of oral argument held February 3, 1988.

*** The Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation.

conviction, the Washington habitual criminal statute provided in relevant part:

> Every person convicted in this state of ... any felony, who shall previously have been twice convicted ... of any crime which under the laws of this state would amount to a felony, ... shall be punished by imprisonment in the state penitentiary for life.

R.C.W. 9.92.090 (West 1988).[1] Alford had previously been convicted of the following felonies: (1) possession of a controlled substance, in violation of the Uniform Controlled Substances Act (UCSA), in 1978; (2) delivery of heroin and possession with intent to deliver heroin, in violation of UCSA, in 1972; and (3) first degree forgery, in 1964.

In May 1979, the state trial judge found Alford to be an habitual criminal, and sentenced him to life imprisonment.[2] In the direct appeal Alford, through his attorney Lewis H. Nomura, attacked the prior convictions underlying the habitual criminal finding.

The court of appeals held that Alford's 1964 forgery conviction was defective and could not be used in the habitual criminal proceeding. The court vacated the life sentence and remanded for resentencing. The state moved to recall the court's mandate and for a clarification of the decision, since the two other UCSA convictions were sufficient to uphold the habitual criminal finding. The court of appeals granted the motion, and allowed Alford to file a supplemental brief through his new attorney, Michael Filipovic. The court then modified its decision and upheld the habitual criminal finding and life sentence. Alford moved for reconsideration in the court of appeals, and petitioned for review and a personal

restraint in the Washington Supreme Court. All petitions were denied.

On June 25, 1986, Alford filed this habeas corpus petition in the United States District Court. The district court denied the petition. Alford appeals.

## STANDARD OF REVIEW

We review *de novo* a district court's denial of a habeas corpus petition. *Bayramoglu v. Estelle*, 806 F.2d 880, 886–87 (9th Cir.1986).

## DISCUSSION

Habeas corpus relief is appropriate only if a prisoner is held in custody in violation of the Constitution or laws or treaties of the United States. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). Alford raises three claims under the Constitution. He claims that the habitual criminal finding was flawed as a matter of Washington law, and in violation of his due process and equal protection rights under the Constitution's fifth and fourteenth amendments. Alford also argues violations of his sixth amendment right to counsel. Finally, he claims the life sentence imposed upon him violates his eighth amendment right to be free from cruel and unusual punishment.

## I. The habitual criminal finding

Alford contends that, in upholding his habitual criminal finding, the Washington Court of Appeals denied him a constitutionally required due process hearing. Alford claims that the court of appeals denied him the opportunity to argue that Washington law required reversal of the habitual

---

1. The statute was made inapplicable to felonies committed on or after July 1, 1984, by the enactment of R.C.W. 9.92.900 in 1981 (West 1988).

2. Alford will be eligible for parole after serving fifteen years, though Washington's Indeterminate Sentence Review Board may grant Alford parole after six years of confinement. R.C.W. 9.95.040 (West 1988) provides:

    (3) For a person convicted of being an habitual criminal within the meaning of the statute

which provides for mandatory life imprisonment ..., the duration of confinement shall not be fixed at less than fifteen years.

....

[T]he [Indeterminate Sentence Review Board] may parole an inmate prior to the expiration of a mandatory minimum term....

The Board may waive the minimum fifteen year term for habitual offenders after six years of confinement. Indeterminate Sentence Review Board Policies and Procedure Manual, Rule 3.140(2).

criminal finding.[3]

Alford's claim is contradicted by the record. The court of appeals first vacated Alford's sentence to life imprisonment. After granting the state's motion to clarify its decision, and before issuing its clarifying decision, the court allowed Alford to file a supplemental brief. In that brief, Alford argued that Washington law required reversal of the habitual criminal finding, the very issue on which he now claims he was denied a hearing. That the court of appeals was not persuaded, and affirmed the habitual criminal finding and life sentence, does not mean Alford lacked a due process hearing.

■ Alford argues that the Washington Court of Appeals denied him equal protection of the laws by treating him differently from other Washington defendants who appeal habitual criminal findings.[4] Alford refers us to Washington case law, where defendants appealing habitual criminal findings have succeeded in obtaining reversal of the findings.[5]

Alford's equal protection claim is without merit. The Supreme Court has said that "[the Equal Protection Clause of] the Fourteenth Amendment does not 'assure uniformity of judicial decisions ... [or] immunity from judicial error....' [O]therwise, every alleged misapplication of state law would constitute a federal constitutional question." *Beck v. Washington*, 369 U.S. 541, 554–55, 82 S.Ct. 955, 962–63, 8 L.Ed.2d 98 (1962) (quoting *Milwaukee Electric Ry. & Light Co. v. Wisconsin ex rel. Milwaukee*, 252 U.S. 100, 106, 40 S.Ct. 306, 309, 64

L.Ed. 476 (1920)). *See Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir.1985) (habeas corpus relief "is unavailable for alleged error in the interpretation or application of state law").

■ Finally, Alford contends that the habitual criminal finding was unsupported by the evidence. Aside from the invalid forgery conviction, two prior UCSA violations support this finding. Alford claims that the 1978 UCSA conviction was not introduced into evidence at his habitual criminal trial, and that therefore the single remaining UCSA conviction is insufficient to support the finding.

The record supports the habitual criminal finding. In Washington, whether the state proves the convictions necessary to support a habitual criminal finding is a question of fact. *See State v. Hennings*, 100 Wash.2d 379, 382, 670 P.2d 256, 257 (1983) (en banc). In habeas corpus proceedings, we presume a state court's finding of fact to be correct, unless a 28 U.S.C. § 2554(d) factor is present,[6] or the finding is not fairly supported by the record. *Sumner v. Mata*, 455 U.S. 591, 592, 102 S.Ct. 1303, 1304, 71 L.Ed.2d 480 (1982).

The record here reveals that the 1978 conviction was received in evidence, without objection, at a motion immediately prior to the habitual criminal trial. The bench trial was before the same judge who presided at the pretrial motion. During trial, the parties and the trial judge assumed that the conviction was in evidence, since the parties stipulated that Alford was the person convicted for the 1978 UCSA viola-

---

3. Alford argues that once the court of appeals held his forgery conviction defective, Washington law required a remand, even if enough convictions remained to support the habitual criminal finding. He cites *State v. Alexander*, 10 Wash.App. 942, 521 P.2d 57 (1974) and *State v. Mace*, 97 Wash.2d 840, 650 P.2d 217 (1982). In both cases, some of the convictions underlying the habitual criminal finding were held defective. Although the defendants' other convictions were enough to support the habitual criminal finding, the courts reversed and remanded, allowing the prosecution to consider whether to reinstitute habitual criminal proceedings in light of the lesser number of valid convictions. *See Alexander*, 10 Wash.App. at 946–47, 521 P.2d at 60; *Mace*, 97 Wash.2d at 845, 650 P.2d at 220.

4. At the district court, Alford presented this issue as a due process problem. He has abandoned that argument on appeal.

5. *See supra* note 3.

6. The factors are: (1) the merits were not resolved at the state hearing; (2) the fact finding procedure did not afford a full and fair hearing; (3) the facts were not developed at the state hearing; (4) the state court lacked jurisdiction; (5) the applicant was indigent and was denied counsel; (6) there was no full and fair hearing; (7) the applicant was denied due process of law. 28 U.S.C. § 2554 (1982).

tion. Verbatim Record of Proceedings, April 30, 1979, at 45–46. We conclude that no § 2254(d) factor is present. Although the evidentiary status of the 1978 conviction at trial could have been made clearer, the trial court's finding that the 1978 conviction had been proven beyond a reasonable doubt is fairly supported by the record.

## II. Right to counsel

Alford's habitual criminal trial followed his conviction for possessing stolen property. He was found an habitual criminal, and he appealed through his attorney Louis H. Nomura. Nomura, however, did not assign as error a certain jury instruction given at the trial for possession of stolen property. The Washington Court of Appeals first vacated Alford's sentence to life imprisonment, but then granted the state's motion to clarify its ruling. Before issuing its clarifying decision, however, the court allowed Michael Filipovic, Alford's new attorney, to file a supplemental brief, where Filipovic presented the issue of the claimed erroneous instruction.

The court of appeals affirmed the habitual criminal finding and sentence without discussing the jury instruction issue. Alford now argues that Nomura's failure to raise the instruction issue amounts to either an absolute denial of counsel or to ineffective assistance of counsel, in violation of his sixth amendment rights.

■ Alford was not denied counsel. Alford was represented on appeal by two attorneys, Mr. Nomura and Mr. Filipovic. Alford's theory appears to be that Nomura was so incompetent that his assistance was equivalent to denial of assistance. Even if we concede for the purposes of argument that incompetence can constitute denial of counsel, we do not agree that Nomura's assistance was totally ineffectual since he successfully attacked one of Alford's prior felony convictions. Alford's theory also ignores Mr. Filipovic's role as counsel during

the appeal. We are therefore convinced the proper inquiry under these facts is whether Alford was ineffectively assisted by counsel on appeal.

To claim ineffective assistance of counsel, a petitioner must show (1) incompetent professional assistance; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 690–92, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674 (1984). We have extended the *Strickland* analysis to appeals. *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir.1986). We conduct the ineffectiveness inquiry *de novo*. *Id*.

■ Applying the *Strickland* test, we find Alford's ineffective assistance claim unpersuasive for failure to show prejudice. To show prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Alford claims that prejudice resulted from failing to argue the jury instruction's unconstitutionality at the initial stage of his appeal. Alford's claim is undermined by the fact that Mr. Filipovic argued the issue before the court of appeals in the supplemental brief. Neither Alford nor the record shows any reason why the Washington Court of Appeals would refuse to consider the additional claims raised in the supplemental brief. Thus, we cannot conclude that prejudice resulted only because the jury instruction issue was raised in the supplemental brief.

Alford also points out that the court of appeals failed to discuss his arguments in its clarifying decision. Whatever the court's reasons were for not discussing Alford's arguments, Nomura and Filipovic presented Alford's full case squarely to the court. On the basis of the record, Alford fails to show that the outcome would have been different but for Nomura's failure to argue the jury instruction at the initial stage of the appeal.[7]

7. Alford also suggests that the court did not appreciate his argument because the supplemental brief was filed ten months after the initial appeal, and because the brief discussed four other issues. Without more substantial proof, we cannot believe the consideration of Alford's claims was prejudicially affected by factors so common to the appellate process.

### III. Eighth amendment cruel and unusual punishment

■ After he was found an habitual criminal, Alford was sentenced to life imprisonment. Washington's sentencing rules make Alford eligible for parole as early as six years after confinement, at the discretion of the Indeterminate Sentence Review Board, or at most after fifteen years, as provided under R.C.W. 9.95.040.[8] He claims the sentence constitutes cruel and unusual punishment under the eighth amendment, based on *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The state contends that Alford's case is controlled by *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), and that the sentence does not violate the eighth amendment.

In *Rummel,* the habeas petitioner was sentenced to life imprisonment with possibility of parole under the Texas recidivist statute. The statute applied only to three-time felons imprisoned for the two previous felonies. *Rummel,* 445 U.S. at 278, 100 S.Ct. at 1141. The petitioner in *Rummel* was convicted of the following felonies: (1) fraudulent use of a credit card to obtain $80.00 worth of goods or services; (2) passing a forged check for $28.36; and (3) obtaining $120.75 under false pretenses.

The Supreme Court upheld the petitioner's life sentence against an eighth amendment challenge that the sentence was grossly disproportionate to the offense. The Court limited the use of proportionality analysis to death penalty cases, *id.* at 272, 100 S.Ct. at 1138, and 'extreme example[s, such as] if a legislature made overtime parking a felony punishable by life imprisonment." *Id.* at 274, n. 11, 100 S.Ct. at 1139 n. 11. Otherwise, "one could argue ... that for crimes concededly classified and classifiable as felonies ... the length of the sentence actually involved is purely a matter of legislative prerogative." *Id.* at 274, 100 S.Ct. at 1139. This deference to legislatures avoided the subjective views of individual Justices to shape the eighth amendment. *Id.* at 275, 100 S.Ct. at 1139.

Three years later the Court decided *Solem.* The habeas petitioner had been convicted of three third-degree burglaries, obtaining money under false pretenses, grand larceny, and driving while intoxicated. When the petitioner was convicted for uttering a "no account" check for $100, his seventh felony, he was sentenced to life imprisonment without possibility of parole under South Dakota's recidivist statute. The Court concluded that the sentence violated the eighth amendment.

*Solem* rejects limiting proportionality analysis to death penalty and extreme imprisonment cases, saying that "there is no basis for the ... assertion that the general principle of proportionality does not apply to felony prison sentences." *Solem,* 463 U.S. at 288–89, 103 S.Ct. at 3008–09. While deference to the legislatures in determining punishments is appropriate, "no penalty is *per se* constitutional." *Id.* at 290, 103 S.Ct. at 3009. The Court established a framework of objective factors to consider in conducting proportionality analysis: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; (3) the sentences imposed for the same crime in other jurisdictions. *Id.* at 292, 103 S.Ct. at 3010.

We must decide to what extent *Solem* and *Rummel* apply to this case. After the *Solem* decision, we have consistently referred to *Solem* 's proportionality analysis to determine the constitutionality of prison sentences against eighth amendment challenges. *United States v. Ramos,* 861 F.2d 228, 232, (9th Cir.1988) (upholding mandatory five year minimum sentence without parole for distribution of a controlled substance); *United States v. Klein,* 860 F.2d 1489, 1495–1500 (9th Cir.1988) (upholding mandatory five year minimum sentence without parole for possession of a controlled substance with intent to distribute); *United States v. Cook,* 859 F.2d 777, 778–79 (9th Cir.1988) (upholding mandatory five year minimum sentence without parole for importation of a controlled substance), *United States v. Kinsey,* 843 F.2d 383, 392

8. *See supra* note 2.

**1222**

(9th Cir.1988) (upholding 20 year mandatory minimum sentence for conspiracy to distribute and possession with intent to distribute cocaine); *United States v. Morse,* 785 F.2d 771 (9th Cir.1986) (upholding one year sentence for collecting $9,671 under false pretenses).

We note, however, that this case differs from our previous cases, in that none of those cases involved life sentences pursuant to habitual criminal findings. Since the *Solem* Court concluded that *Rummel* "is controlling ... in a similar factual situation," *id.* 463 U.S. at 304, n. 32, 103 S.Ct. 3017, n. 32, we must decide whether this case is sufficiently similar to *Rummel* to fall under its purview.

Alford's case is arguably factually similar to *Rummel.* Both cases involve life sentences with possibility of parole, imposed pursuant to habitual criminal statutes. Both habitual criminal statutes required two previous felony convictions to impose the life sentence. The prior convictions of both offenders were non-violent in nature. Thus, we could uphold Alford's sentence based on the broad deference to the legislative determinations of punishment that *Rummel* advocates.

We do not, however, rest the decision to uphold Alford's life sentence on *Rummel* alone, since we believe the same result obtains under *Solem*'s proportionality analysis, and such analysis is consistent with this circuit's authority. We explicitly leave open the issue of which of these two cases would control, if the facts of a case resembled *Rummel,* but a *Solem* analysis produced a different outcome. Such is not the case here.

### A. Gravity of the offense and harshness of the penalty

The first factor to consider under *Solem* is the gravity of the offense and the harshness of the penalty. In *Solem,* the peti-

tioner was convicted of uttering a "no account" check for $100, which offense normally carried five years imprisonment. *Solem,* 463 U.S. at 281, 103 S.Ct. at 3005. Alford's offense is comparatively more serious. He was convicted for possession of stolen property under R.C.W. 9A.56.150 (West 1988). That statute provides that the offense is in the first degree, and thus a "B" felony, when the value of the property exceeds $1,500. The property found in Alford's possession was worth $17,000, or more than ten times the minimum threshold. The offense was punishable at the time of the offense by not more than ten years, by a fine of not more than $20,000, or both. R.C.W. 9A.20.020 (West 1988).[9]

The gravity of the habitual criminal sentence, and the harshness of its penalty, is gauged by reference to the felonies that support the habitual criminal finding. *Solem,* at 296–97, 103 S.Ct. at 3012–13. In *Solem,* life imprisonment was excessive punishment considering the non-violent nature of the petitioner's prior offenses, and the fact that the petitioner would never be eligible for parole. *Id.* at 297, 103 S.Ct. 3013. Alford's prior UCSA convictions were also non-violent, but Alford's punishment is considerably less severe. Alford could become eligible for parole after six years of confinement, at the discretion of the Indeterminate Sentence Review Board, or after fifteen years, under R.C.W. 9.95.040. We therefore cannot say that the punishment here was excessively harsh relative to the gravity of Alford's offenses.

### B. Sentences imposed on other criminals in the same jurisdiction

We next consider *Solem*'s second factor, whether Alford's punishment is excessive relative to other crimes in the same jurisdiction. In *Solem,* life without possibility of parole was generally imposed for crimes

**9.** Alford claims in his Opening Brief that under *current* Washington law, and considering all his prior convictions, Alford's maximum sentence would be from 4–12 months. We find no basis for this assertion. Our research reveals that possession of stolen property in the first degree, at the time of Alford's conviction *and* today, is a "B" felony, R.C.W. 9A.56.150 (West 1988). "B" felonies are currently punishable by not more than 10 years, or a fine not more than $20,000, or both, if committed before July 1, 1984, R.C.W. 9A.20.020 (West 1988) or by 10 years, a fine of $20,000 or both, if committed after July 1, 1984. R.C.W. 9A.20.021 (West 1988).

more serious than the petitioner's offenses. *Id.*, at 298–99, 103 S.Ct. at 3013–14.

In Washington, at the time of Alford's offense, capital punishment and life without possibility of parole were harsher punishments than Alford's, and were imposed for first degree murder after consideration of aggravating and mitigating factors. R.C.W. 9A.32.040 (West 1988) (amended 1981). On a first offense, life imprisonment was imposed for first degree murder if aggravating circumstances were absent. *Id.* However, life imprisonment for habitual offenders was not unique to violent felons, but applied also to persons twice previously convicted of fraud, intent to defraud, or petit larceny. R.C.W. 9.92.090.[10]

Since the life imprisonment sentence for habitual criminals was not limited to more serious offenders than Alford, his punishment was not excessive relative to other criminals in the same jurisdiction.

### C. Sentences for commission of the same crime in other jurisdictions

In *Solem*, the Supreme Court concluded that the petitioner had been punished more severely than similar criminals in any other jurisdiction. *Id.* at 300, 103 S.Ct. at 3014. That is not the case here. At the time of Alford's conviction, at least Texas and West Virginia imposed life sentences with possibility of parole, pursuant to recidivist statutes. Tex.Penal Code Ann., Appendix Art. 63 (repealed Articles of former Penal Code) (Vernon 1974); W.Va.Code § 61–11–18 (Michie 1987). South Dakota's scheme imposed a life sentence without the possibility of parole. *See Solem*, 463 U.S. at 281–82, 103 S.Ct. at 3005. Nevada provided for life imprisonment with or without possibility of parole after three felonies or five misdemeanors. Nev.Rev.Stat. § 207.010(2) (1987) (punishment clause enacted in 1977; *see* Assembly Bill No. 383, 59th Sess., 1977 Nev. Laws 360).

In conclusion, we believe that Alford's sentence is within the constitutional bound-

aries set out in *Solem*. Life imprisonment with possibility of parole after six or fifteen years is not excessively harsh relative to the gravity of Alford's offenses. At the time of his conviction, Alford was not treated excessively harshly in comparison to other Washington offenders. Various jurisdictions had recidivist provisions similar to Washington's habitual criminal scheme.

■ Finally, Alford argues against our application of *Solem*'s proportionality analysis. He contends that the analysis should not be carried out, as we have done, by reference to Washington's law as it was at the time of Alford's conviction, but by reference to present law. We recognize that the Washington legislature has moved to reduce the penalties for habitual criminals by making the habitual criminal statute inapplicable to felonies committed after July 1, 1984. We nevertheless reject Alford's argument for two reasons. First, *Solem* itself assumes that the law to be examined is that which is operative at the time of the conviction. *See Solem*, 463 U.S. at 280–81, nn. 1–6, 103 S.Ct. at 3004–05, nn. 1–6. Second, we see no intent on the part of the Washington legislature to repeal the habitual criminal statute retrospectively. R.C.W. 9.92.900, which discontinued the application of the habitual criminal statute in 1981, merely says "[The habitual criminal statute] do[es] not apply to any felony offense committed on or after July 1, 1984." R.C.W. 9.92.900 (West 1988). Alford's offenses occurred before July 1, 1984.

AFFIRMED.

---

**10.** Many frauds were misdemeanors. *See e.g.,* R.C.W. 9.45.070 (mock auctions considered misdemeanors). The petit larceny offense was substituted in 1975 by the offense of theft, R.C.W. 9A.56.020 to 9A.56.050 (West 1988), where theft in the third degree is a gross misdemeanor. R.C.W. 9A.56.050.