**Secundino Barcelo COCIO, Petitioner–Appellee,**

v.

**Lloyd BRAMLETT, Superintendent, Arizona State Prison, Florence, Respondent–Appellant.**

**No. 88–2607.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1989.

Decided April 13, 1989.

Jack Roberts, Asst. Atty. Gen., Phoenix, Ariz., for respondent-appellant.

Robert Joel Hirsh, Hirsh, Sherick & Murphy, P.C., Tucson, Ariz., for petitioner-appellee.

Before GOODWIN, ALARCON and NELSON, Circuit Judges.

ALARCON, Circuit Judge:

The State of Arizona appeals from the district court's order granting a writ of habeas corpus. The district court concluded that, as applied to the petitioner, a life sentence without the possibility of parole for twenty-five years violated the eighth amendment. The state contends that Arizona Revised Statutes Annotated § 13–604.02 (Supp.1988), which mandates a life sentence for a convicted felon on probation, is constitutionally proportionate as applied to the convicted petitioner, Secundino Barcelo Cocio. We agree with the State of Arizona that Cocio's sentence was constitutionally proportionate and reverse.

## I

## FACTS

On March 23, 1983, Cocio and codefendant Rodriquez were involved in an automobile accident that resulted in the death of Rodriquez's brother. Cocio caused the accident by making an unsafe left turn into the side of Rodriquez's moving car. Cocio and Rodriquez were both legally intoxicated at the time of the accident. Cocio had a blood alcohol level of .28, almost three times the level of presumed intoxication in Arizona. Cocio was on probation for a felony conviction for conspiracy to commit burglary at the time of the accident.

Rodriquez pled guilty to manslaughter and driving under the influence of intoxicating liquor and received a sentence of probation for one year and a fine. Cocio refused to enter into a plea agreement and proceeded to trial. A jury convicted Cocio of manslaughter (Ariz.Rev.Stat.Ann. § 13–1103) and driving under the influence (Ariz.Rev.Stat.Ann. § 28–692). The jury also found Cocio guilty of using a dangerous instrumentality, his car, in the commission of the crime. Due to Cocio's probationary status and his use of a dangerous instrumentality, Cocio was sentenced to life imprisonment under Arizona Revised Statutes Annotated § 13–604.02 (formerly 13–604.01). Section 13–604.02 mandates a life sentence with no opportunity of release for a minimum of twenty-five years for a convicted felon who commits a subsequent felony involving a dangerous instrumentality while on release from confinement.

Cocio appealed from the judgment imposing a punishment of life imprisonment with a twenty-five year mandatory minimum sentence to the Arizona Supreme Court. The Arizona Supreme Court affirmed the judgment. *State v. Cocio*, 147 Ariz. 277, 709 P.2d 1336 (1985) (en banc). The Arizona Supreme Court concluded that the evidence that Cocio deliberately committed a grave offense with a dangerous instrumentality warranted a severe penalty. In September of 1986, after exhausting his state remedies, Cocio sought a writ of habeas corpus in the District Court for the District of Arizona.

On April 13, 1988, the district court granted Cocio's petition pursuant to 28 U.S.C. § 2254. The district court granted habeas corpus relief finding that the sentence violated the eighth amendment on the following grounds: 1) Cocio's life sentence was patently unfair when compared with the equally culpable codefendant's sentence; 2) Cocio's life sentence was more severe than sentences for more serious crimes in Arizona; 3) Cocio's triggering felony did not require proof of an intent to inflict serious physical injury in contrast to all other sentences previously imposed pursuant to Arizona Revised Statutes Annotated § 13–604.02; and 4) Cocio's sentence was excessively severe in comparison to sentences for similar crimes in other jurisdictions. The State of Arizona filed a timely notice of appeal. The district court stayed release or resentencing pending this appeal.

## II

## STANDARD OF REVIEW

We review independently and non-deferentially an order granting or denying a petition for habeas corpus. *Mannhalt v. Reed*, 847 F.2d 576, 579 (9th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 260, 102 L.Ed.2d 249 (1988); *Chatman v. Marquez*, 754 F.2d 1531, 1533–34 (9th Cir.), *cert. denied*, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed. 2d 101 (1985).

## III

## DISCUSSION

We must decide whether imposing a life sentence without possibility of release for a minimum of twenty-five years is cruel and unusual punishment when applied to a felon on probation who commits a homicide while recklessly driving under the influence of intoxicating liquor.

We recently addressed the constitutionality of a life sentence under the Eighth Amendment in *Alford v. Rolfs*, 867 F.2d 1216 (9th Cir.1989). In *Alford* we upheld a life sentence with eligibility for parole after

fifteen years under Washington's habitual criminal statute.[1] *Id.* at 1220–1223. Alford received the life sentence for his felony conviction for possession of stolen property, because he had previously been convicted of three felonies. Alford's previous felony convictions were for possession of a controlled substance, delivery of heroin and possession with intent to deliver heroin, and first degree forgery. *Id.* at 1218.

In *Alford* we explained that we must follow the proportionality analysis set forth in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), to determine the constitutionality of a prison sentence against an eighth amendment challenge. *Alford*, at 1221–22.

The Supreme Court in *Solem* delineated an objective three prong test for analyzing the proportionality of noncapital sentencing. 463 U.S. at 290–92, 103 S.Ct. at 3009–11. The three prongs are: 1) the gravity of the offense and harshness of the penalty; 2) the sentences imposed on other criminals in the same jurisdiction; and 3) the sentences imposed for commission of the same crime in other jurisdictions. *Id.*

The defendant in *Solem* was convicted of the felony of uttering a "no account" check. He had previously been convicted of five other felonious property offenses. *Id.* at 279–80, 103 S.Ct. at 3004–05. He had also suffered a sixth felony conviction for third-offense driving while intoxicated. His nonviolent criminal conduct was caused at least in part by his alcoholism. The defendant was sentenced to life imprisonment without possibility of parole, probation, or work release under South Dakota's habitual criminal statute. *Id.* at 281–82, 103 S.Ct. at 3005–06. The only possible form of release available to the defendant was a commutation by the governor. *Id.*

The Court held that imposing a life sentence without possibility of parole for the conviction of uttering a "no account" check was prohibited by the eighth amendment. *Id.* at 303, 103 S.Ct. at 3016. The Court reasoned that the defendant had received the maximum sentence imposed for any

crime in South Dakota for a minor offense. *Id.* at 296–97, 103 S.Ct. at 3012–13. Additionally, the Court found that more serious offenders received less severe sentences in South Dakota. The Court also concluded that virtually all other jurisdictions would have imposed a less severe sentence. *Id.* at 300, 303, 103 S.Ct. at 3015–16.

We have consistently applied *Solem's* three part test. We have noted, however, that the analysis in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), must be applied in a situation similar to the facts presented to the Supreme Court in that case. *Alford*, at 1222 (citing *Solem*, 463 U.S. at 304, n. 32, 103 S.Ct. at 3017, n. 32). In *Rummel* the petitioner received a life sentence with a possibility of parole after twelve years under the Texas recidivist statute. Rummel received this sentence for his conviction for felony theft, because he had been imprisoned twice previously for felony convictions. Rummel's previous felonies were for fraudulent use of a credit card to obtain $80.00 worth of goods or services and for passing a forged check for $28.36. 445 U.S. at 265–66, 100 S.Ct. at 1134–35.

The Court in *Rummel* upheld the sentence noting that Rummel could be eligible for parole in twelve years. *Id.* at 280–81, 100 S.Ct. at 1142–43. Implicit in the Supreme Court's analysis was a recognition of the right of a state under its police power to determine the proper prison sentence that should be imposed within its borders upon habitual offenders. *Id.* at 274, 100 S.Ct. at 1139.

Like the petitioner in *Rummel*, Cocio received a life sentence with the possibility of parole. This matter differs from *Rummel* and *Solem*, however, because Cocio was convicted of committing a crime of violence. Cocio's criminal behavior resulted in the death of a human being. This difference is important because the focus in determining proportionality is not on the sentence, but on the disparity between the offense and the sentence. *Solem*, 463 U.S. at 285, 303, 103 S.Ct. at 3007, 3016. We

---

1. Alford could be granted parole after six years if the Indeterminate Sentence Review Board

waives the minimum fifteen year term for habitual offenders. *Alford,* at 1218 n. 2.

recognize that "no penalty is *per se* constitutional," *id.* at 290, 103 S.Ct. at 3009, however, we are required to defer to the power of a state legislature to determine the appropriate punishment for violation of its laws based on principles of federalism, unless we are confronted with a rare case of a grossly disproportionate sentence. *Rummel*, 445 U.S. at 274, 100 S.Ct. at 1139; *Alford*, at 1221. We conduct our proportionality review by looking at the totality of the circumstances and by applying the objective factors revealed in *Solem*. 463 U.S. at 290–92, 103 S.Ct. at 3009–11; *Cabana v. Bullock*, 474 U.S. 376, 386, 106 S.Ct. 689, 697, 88 L.Ed.2d 704 (1985).

## A. Gravity of the Offense and Harshness of the Penalty

The first factor we must consider under *Solem* is the gravity of the offense and the harshness of the penalty. The type of harm threatened or caused and the level of the defendant's culpability determine the gravity of the offense. *Solem*, 463 U.S. at 292, 103 S.Ct. at 3010. The type of harm is measured by whether the crime was violent in nature and whether the offense was directed at a person or at property. *Id.* at 292–93, 103 S.Ct. at 3010–11.

Cocio was convicted of manslaughter with a special finding that he used a dangerous instrumentality in the commission of that crime. Manslaughter is a violent crime. Operating a vehicle on public streets while intoxicated poses a grave threat to the safety and lives of others. Cocio's crime was directed at people, not property. *See id.* at 296, 103 S.Ct. at 3013. Unlike a charge of writing bad checks, manslaughter which results from driving a vehicle under the influence of an intoxicant is a violent crime directed at humans.

The law recognizes that certain criminal conduct is deserving of greater condemnation and punishment. *Enmund v. Florida*, 458 U.S. 782, 798, 102 S.Ct. 3368, 3377, 73 L.Ed.2d 1140 (1982); *Adamson v. Ricketts*, 865 F.2d 1011, 1027 (9th Cir.1988) (en banc). Intentional acts are more reprehensible than reckless acts. Reckless acts are more serious than negligent acts. *Solem*, 463 U.S. at 293, 103 S.Ct. at 3011.

Cocio argues that because he was guilty of reckless conduct, not an intentional act, his crime warrants a lesser punishment than life imprisonment. While intentional or knowing criminal conduct is more serious than reckless conduct, a "reckless indifference to the value of human life may be every bit as shocking to the moral sense as an 'intent to kill.' " *Tison v. Arizona*, 481 U.S. 137, 157, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987).

Arizona contends that while the evidence does not show that Cocio intended to take life, he intended to consume a large quantity of liquor and to expose others to his seriously impaired ability to drive a two-ton vehicle safely. Arizona argues that the consequence to the victim is the same whether a killing results from an intent to take life or from a reckless disregard for the safety of others. Accordingly, Arizona argues that the death of the victim as the result of voluntary and reckless acts of the accused is an appropriate factor to be considered in analyzing the proportionality of the sentence.

Cocio's intended acts of drinking and driving demonstrate his conscious disregard for human life. Cocio's reckless state of mind, while less reprehensible than an intent to take human life, is an appropriate consideration in determining the gravity of the offense and harshness of the penalty. Moreover, the Supreme Court has upheld the death penalty as proportional to a reckless defendant whose conduct was a substantial cause of a homicide. *Tison*, 481 U.S. at 158, 107 S.Ct. at 1688.

Cocio's actions substantially caused the death of Rodriquez's brother. Without Cocio's unsafe left turn, the accident would never have occurred. While Rodriquez was legally intoxicated and speeding, Cocio caused the accident by making an unsafe turn. Therefore, Cocio's mental state of recklessness does not necessarily preclude imposing a severe sentence.

Courts and state legislatures have recently become more concerned about the rising number of drunk drivers and the

deaths they cause. *State v. Superior Court,* 143 Ariz. 45, 691 P.2d 1073, 1076 (1984); *State v. Deskins,* 234 Kan. 529, 673 P.2d 1174, 1181 (1983); *State v. Coccomo,* 177 N.J.Super. 575, 427 A.2d 131, 134 (1980); *see also* Ala.Code § 13A-6-3 (Supp. 1988) (statute was amended in 1987 and manslaughter was upgraded from a Class C felony to a Class B felony); Haw.Rev. Stat. § 707-702.5 (Supp.1988) (in 1988 negligent homicide in the first degree was upgraded from a Class C to a Class B felony because the Legislature felt that stronger measures were needed to protect the public and to deter those who operate a vehicle while under the influence of drugs or alcohol); Me.Rev.Stat.Ann. tit. 17-A, § 203(3) (Supp.1988) (statute was amended in 1983 and reckless operation of a motor vehicle was upgraded from a Class C crime to a Class B crime).

Although it may be argued that a life sentence is stern punishment for reckless conduct, the taking of a human life when considered in light of society's understandable concern with the grave danger imposed by drunk driving clearly supports the imposition of a punishment of life imprisonment with a mandatory minimum sentence of twenty-five years.

Cocio's recidivist status is also relevant to a proportionality analysis. It is well established that a state has a legitimate interest in imposing greater punishment on habitual offenders than on first time offenders. Sentence enhancements for repetitive offenders have been consistently upheld. *See Rummel,* 445 U.S. at 276, 100 S.Ct. at 1140 (1980) (mandatory life sentence for recidivist); *Alford,* at 1223 (mandatory life sentence after third felony conviction); *United States v. Soto,* 779 F.2d 558, 563 (9th Cir.1986) (twenty-five year enhancement under special offender statute, 18 U.S.C. § 3575), *amended,* 793 F.2d 217, *cert. denied,* — U.S. —, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987). Arizona is justified in imposing a greater sentence on Cocio due to his previous conviction for conspiracy to commit burglary.

In addition to being a recidivist, Cocio was on probation at the time of his man-slaughter conviction. Arizona has singled out criminals who commit felonies while on release from confinement as even more deserving of a harsh sentence than mere recidivists. An enhanced sentence is justifiable under these circumstances because the probationer has committed a new offense while still under court restraint because of his most recent crime. *Cf. Solem,* 463 U.S. at 296 n. 21, 103 S.Ct. at 3013 n. 21 (Court indicated that the focus was on the triggering felony since Helm had already paid the penalty for each of his prior offenses). Additionally, the possible deterrent effect to others on probation warrants imposition of a greater sentence to those who violate probation by committing a new offense.

Whether the opportunity for parole exists is an important factor in determining the harshness of the penalty. *Solem,* 463 U.S. at 297, 103 S.Ct. at 3013. The Court in *Solem* relied heavily on the absence of a possibility of parole in its determination that the sentence was unconstitutional. *Id.* at 297, 300-03, 103 S.Ct. at 3013, 3014-16. The nonexistence of the possibility of parole explains the result in *Solem,* as distinguished from the ruling in *Rummel.* In *Rummel,* the Court found that the petitioner would be eligible for parole after twelve years. *Rummel,* 445 U.S. at 280, 100 S.Ct. at 1142. The Court in *Solem* indicated that the life sentence in *Rummel* was less severe than the punishment imposed in *Solem* because of the possibility of parole. *Solem,* 463 U.S. at 297, 103 S.Ct. at 3013. The possibility that the Governor could commute Helm's sentence was dismissed by the Court as "nothing more than a hope for 'an *ad hoc* exercise of clemency.'" *Id.* at 303, 103 S.Ct. at 3016.

Cocio's sentence does not preclude parole. Cocio, like the defendant in *Rummel,* will be eligible for release after serving the twenty-five year statutory minimum. Although it is true that Rummel was eligible for release after twelve years, while Cocio must wait twenty-five years, each is eligible for parole.

The district court's concern with the disparity between Cocio's and Rodriquez's sentences is misplaced. The disparity be-

tween Cocio's and Rodriquez's sentences might possibly be relevant if they could have been prosecuted and punished under the same statute and the state chose not to do so without proper justification. As we have stated, however, a disparity can be justified by the record. *See United States v. Citro,* 842 F.2d 1149, 1153–54 (9th Cir.) (disparity in sentencing defendant as compared to codefendant was proper where the court considered prior felony conviction of extortion and individual characteristics of the defendant), *cert. denied,* ——— U.S. ———, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988).

While both Cocio and Rodriquez were convicted of the same crimes, they were subject to disparate punishment because of the difference in their past behavior. Additional factors explain the different sentences imposed by the state court. Cocio was a convicted felon. Rodriquez was not. Cocio was on probation at the time the crime was committed. Rodriquez was not. These distinctions adequately explain the disparity. Moreover, Rodriquez will have to live for the rest of his life with the knowledge that his conduct contributed to the death of his brother.

B. Sentences Imposed on Other Criminals in the Same Jurisdiction

The second factor for consideration is whether Cocio's punishment is excessive relative to other crimes committed in the same jurisdiction. The inquiry under *Solem* is whether criminals within Arizona who commit more serious crimes receive the same or less severe sentences than Cocio received. If other criminals who are convicted of more serious crimes receive the same or less severe sentences, then it may be an indication of disproportionality. *Solem,* 463 U.S. at 291, 103 S.Ct. at 3010.

This prong of the *Solem* test is difficult to apply because Arizona Revised Statutes Annotated § 13–604.02 is not concerned so much with a certain crime. The focus of the statute is the enhancement of punishment for those felons on probation who commit a felony with intent to inflict serious injury or with the use of a dangerous instrumentality or who commit the speci-

fied narcotics offenses. Ariz.Rev.Stat.Ann. § 13–604.02. Any individual who is on probation for a prior felony conviction and subsequently commits a felony with the use of a dangerous instrumentality or with the intent to inflict serious injury will receive a life sentence without the possibility of parole for twenty-five years. Ariz.Rev. Stat.Ann. § 13–604.02. A convicted felon on probation who commits aggravated assault, rape, second degree murder, or first degree murder would receive the same life sentence that Cocio received. Ariz.Rev. Stat.Ann. § 13–604.02.

An individual who is not on probation but has a prior felony conviction for second degree murder and commits another second degree murder would receive a sentence of fourteen to twenty-eight years with a presumptive term of twenty years which can be aggravated or mitigated by five years. Ariz.Rev.Stat.Ann. §§ 13–604(G), 13–710 (effective date of this section was May 16, 1985), 13–1104 (Supp.1988). The individual would be eligible for parole after serving two-thirds of the sentence. Ariz.Rev.Stat. Ann. § 13–604(G). An individual who is not on probation and is convicted of manslaughter caused by the use of a dangerous instrumentality and who subsequently is convicted of the same crime would receive a ten to twenty year sentence with no opportunity for release until serving two-thirds of the sentence. Ariz.Rev.Stat.Ann. §§ 13–604(G), 13–1103 (Supp.1988).

An individual who commits first degree murder who is not on probation and does not have a prior felony record would receive a life sentence without possibility of parole for twenty-five years. Ariz.Rev. Stat.Ann. § 13–703 (Supp.1988). A life sentence without possibility of parole for twenty-five years would also be imposed if an individual is convicted of a serious offense (i.e. manslaughter) and had previously been convicted of two or more serious offenses. Ariz.Rev.Stat.Ann. § 13–604(N).

Although Cocio's sentence may appear to be harsh, it must be remembered that Cocio was still under the restraint of the state court for his first felony when he committed the second felony. The fact that Cocio

was on probation when he committed a violent offense, factors not present in *Solem*, justifies stringent societal retribution.

Though the Court in *Solem* stated that the inquiry was a comparison with sentences imposed for more serious crimes within the jurisdiction, the Court noted that no other felon had been given a life sentence for committing crimes similar to the offenses for which Helm was convicted. *Solem*, 463 U.S. at 299, 103 S.Ct. at 3014. Although Cocio appears to be the first felon to be convicted and sentenced under the dangerous instrumentality portion of Arizona Revised Statutes Annotated § 13–604.02, numerous felons who committed felonies with intent to cause injury while on probation were sentenced to life under that statute. *See, e.g., State v. Allie*, 147 Ariz. 320, 710 P.2d 430, 432 (1985) (triggering felonies were armed robbery and first degree burglary); *State v. Williams*, 144 Ariz. 433, 698 P.2d 678, 681 (1985) (triggering felony was armed robbery); *State v. Hutton*, 143 Ariz. 386, 694 P.2d 216, 217 (1985) (triggering felony was voluntary manslaughter); *State v. Noriega*, 142 Ariz. 474, 690 P.2d 775, 779 (1984) (triggering felonies were first degree burglary and aggravated assault); *State v. Weible*, 142 Ariz. 113, 688 P.2d 1005, 1007 (1984) (triggering felonies were armed robbery and aggravated assault). Cocio argues that his sentence is cruel and unusual because his conduct cannot be compared to the conduct of those defendants who acted with specific intent.

As discussed above, while Cocio's conviction was for reckless conduct, this does not negate the violent nature of his offense. Cocio attempts to downplay the violent nature of the crime of manslaughter by emphasizing that his previous conviction was for non-violent conduct. While the Supreme Court has indicated that the past conviction is relevant in determining whether the present sentence is cruel or unusual, the focus is on the felony that triggered the sentence at issue. *Solem*, 463 U.S. at 296 n. 21, 103 S.Ct. at 3013 n. 21. Moreover, Cocio's previous conviction for a non-violent offense does not differ dramatically from the criminal record of at least one other defendant who received a comparable sentence in Arizona. *See Noriega*, 690 P.2d at 779 (1984) (predicate felony convictions for obtaining narcotics by fraud and attempt to obtain narcotics by fraud).

Furthermore, Arizona Revised Statutes Annotated § 13–604.02 applies to specific types of criminal conduct, i.e. using a dangerous instrument during the course of committing a felony, intentionally causing serious physical injury during the commission of a felony, or committing the specified felony narcotics offenses. The fact that Cocio did not intend to inflict serious injury, which distinguishes his conviction from other Arizona cases, does not compel a finding of disproportionality. In the other Arizona cases in which comparable sentences were imposed under Arizona Revised Statutes Annotated § 13–604.02 an intentional injury was the aggravating factor. Cocio's sentence was enhanced because he used a dangerous instrumentality. The Arizona legislature has determined that intentional injury and the use of a dangerous instrumentality are equally reprehensible. This court lacks the authority to act as a super legislative body dictating the policy considerations that may motivate a state in enhancing the punishment for a crime. Therefore, we reject Cocio's argument that lack of a specific intent to injure compels a finding of disproportionality.

C. Sentences Imposed for Commission of the Same Crime in Other Jurisdictions

The final prong of the *Solem* test requires consideration of the sentence Cocio would have received in other jurisdictions. Almost every state has a habitual or dangerous offender statute. No other state, however, has a specific statute that increases the punishment if a dangerous felony is committed while the accused is on a supervised release from confinement. Therefore, in applying this prong of the *Solem* test, we must look to habitual offender statutes to approximate the sentence Cocio would have received in other jurisdictions. In addition, the possibility of parole complicates comparison of sentence analysis because the individual may not

serve the maximum sentence. *Solem,* 463 U.S. at 294 n. 19, 103 S.Ct. at 3012 n. 19.

Habitual offender statutes prescribe enhancement of a sentence based on the defendant's prior record. These statutes vary considerably. Some require a past conviction of any felony. S.D.Codified Laws Ann. § 22–7–7 (1988) (a felony under laws of any state or the United States). Others require a past conviction of a specified type of felony. Del.Code Ann. tit. 11, § 4214(b) (1987) (requires arson, burglary, murder, manslaughter, kidnapping, assault, rape, sodomy, or robbery). Some statutes require at least two previous felony convictions. Neb.Rev.Stat. § 29–2221 (1985). Others merely require one past felony conviction. Wash.Rev.Code Ann. § 9.92.090 (1988).

The terms imposed by these statutes differ from Arizona Revised Statute Annotated § 13–604.02. Instead of mandating a life sentence, some statutes raise the class of felony, of which the defendant stands convicted, to the next higher class. Ala. Code § 13A–5–9(a)(2) (manslaughter, a Class B felony pursuant to § 13A–6–3 (Supp.1988), becomes a Class A felony so that a sentence of 2 to 10 years becomes 10 years to life); S.D. Codified Laws Ann. § 22–7–7 (1988) (second degree manslaughter, a Class 4 felony pursuant to § 22–16–20, becomes a Class 3 felony with the maximum sentence rising to 15 years under § 22–6–1). Some statutes raise the maximum sentence. D.C.Code Ann. § 22–104 (1981) (maximum of 15 years for manslaughter under § 22–2405 (1981) escalates to a maximum of 22.5 years). Some statutes mandate the imposition of the maximum sentence. Ga.Code Ann. § 27–2511 (Harrison 1988) (O.C.G.A. § 17–10–7) (from a possibility of 10 years for involuntary manslaughter under § 26–1103 (O.C.G.A. § 16–5–3) to a mandatory 10 years). Some states consider either the past conviction or the use of a dangerous weapon as an aggravating factor that can raise the level of the class of felony.

Me.Rev.Stat.Ann. tit. 17–A, § 1252(4) (1988).

In many states an individual is eligible for parole after a certain fraction of the sentence is served. *See, e.g.,* Ala.Code § 15–22–28 (1988) (parole eligibility after one-third of sentence served or ten years whichever is less); Okla.Stat.Ann. tit. 57, § 332.7 (West Supp.1988) (parole eligibility after one-third of sentence served). To the extent that an individual's sentence is enhanced under a habitual offender statute, the individual will serve more time before becoming eligible for parole. However, these statutes do not further restrict release of a felon who has violated parole or probation by committing another felony. A few states do impose additional restrictions on felony offenders. For example, Kentucky Revised Statutes Annotated § 532.080(6) (1985) provides that a persistent felony offender in the first degree, which is a person with two prior felony convictions, is not eligible for release prior to serving ten years.

A survey of the other 49 states and the District of Columbia shows that a person with Cocio's prior felony record would receive a sentence from a minimum of one year to a maximum of life for a homicide involving a vehicle while under the influence of intoxicants. *See, e.g.,* Haw.Rev. Stat. §§ 706.606.5, 706–660, 707–702.5 (Supp.1988) (repeat offender convicted of negligent homicide in the first degree would receive a minimum of three years and four months and a maximum of ten years)[2]; Okla.Stat.Ann. tit. 21, §§ 711, 715 (West 1983) (manslaughter in the first degree receives a sentence of no less than four years); Or.Rev.Stat. § 161.725 (1988) (recidivist could receive a maximum of thirty years). The district court correctly stated that a person with Cocio's prior felony record would receive a presumptive sentence under the 1987 Federal Sentencing Guidelines of 18–24 months for a homicide involving a vehicle while under the influence of intoxicants. Sections 2A1.4, 4A1.1. Such an individual could conceivably be

---

**2.** Prior to 1988 homicide in the first degree was a class C offense with a maximum sentence of

five years. Haw.Rev.Stat. §§ 707–703, 706–660 (1985).

sentenced to life in: Alabama, Ala.Code §§ 13A–5–9, 13A–6–3 (1988) (as of 1987 manslaughter, a class B felony, elevates to a class A felony under habitual offender statute);[3] California, Cal.Penal Code §§ 190, 192(c)(3) (West 1988) (if implied malice is found, can elevate to second degree murder under *People v. Watson,* 30 Cal.3d 290, 294–301, 637 P.2d 279, 179 Cal. Rptr. 43 (1981)); Montana, Mont.Code Ann. §§ 46–18–501, 46–18–502 (1985) (persistent felony offenders can be sentenced up to one hundred years); Oklahoma, Okla.Stat. tit. 21, §§ 711, 715 (manslaughter in the first degree has no maximum sentence); South Dakota, S.D. Codified Laws Ann. §§ 22–7–7, 22–6–1 (1988) (if convicted of first degree manslaughter under § 22–16–15 and had a previous conviction).

Unlike Arizona Revised Statutes Annotated § 13–604.02, a life sentence in these respective jurisdictions is not mandatory but merely within the discretionary range. Furthermore, with the exception of South Dakota, there are no similar restrictions in these jurisdictions that would preclude release for a minimum of twenty-five years as the Arizona statute does. *See* Ala.Code § 15–22–28 (parole eligibility after one-third of sentence served or ten years whichever is less); Cal.Penal Code § 3046 (West 1988) (if life sentence is received, parole eligibility after seven years); Okla. Stat. tit. 57, § 332.7 (West Supp.1988) (parole eligibility after one-third of sentence served); *but see* S.D.Codified Laws Ann. § 24–15–4 (1988) (a person given a life sentence is not eligible for parole). Because no other state has adopted a sentence enhancement provision based on the commission of a crime while on probation, Cocio's punishment is greater than the punishment he would have received in any other jurisdiction.

Merely because a state deviates from the punishment that is meted out in a majority of the states, however, does not necessarily result in an eighth amendment violation. *Spaziano v. Florida,* 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340 (1984).

The fact that one state has the distinction of setting the most stringent prison sentence for a particular crime does not automatically render such punishment "grossly disproportionate" to the offense or to the punishment dictated by other states. *Rummel,* 445 U.S. at 281, 100 S.Ct. at 1143. As the Supreme Court has stated, "[a]bsent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State." *Id.* at 282, 100 S.Ct. at 1143. As explained above, the statutes from other states discussed in this section do not enhance the sentence for those persons who commit violent felonies while on probation following a prior felony conviction. The fact that Arizona has determined that this is a relevant consideration in assessing punishment does not make the sentence disproportionate. This type of policy determination is left to the states under our constitution. We are persuaded that this distinction amply justifies the punishment imposed in this case.

## IV

## CONCLUSION

In sum, it is exceedingly rare that a non-capital sentence is violative of the eighth amendment. *Solem,* 463 U.S. at 289–90, 103 S.Ct. at 3009–10. The extraordinary circumstances presented in *Solem* are not evident in this case. First, Cocio was convicted of a violent offense that resulted in a death. Second, Cocio will be eligible for release after twenty five years. Third, Cocio was on conditional probation when he caused the death. Fourth, Cocio used a dangerous instrumentality in the commission of the crime. Finally, Cocio stands convicted of a crime that has outraged society because of the grave risk it poses to innocent victims. In light of *Solem* and *Rummel,* the opportunity of release after serving the mandatory mini-

---

3. Prior to 1987 manslaughter was a Class C felony, Ala.Code § 13A–6–3 (1982), which would elevate to a Class B felony under the recidivist statute, Ala.Code § 13A–5–9, with a sentence of two to twenty years.

mum sentence, the violent nature of Cocio's crime, the use of a dangerous instrumentality, and the fact that Cocio violated the terms of his probation, justify the finding that the challenged sentence is not cruel and unusual. The district court's order granting Cocio's petition for a writ of habeas corpus is REVERSED.