Edward D. ECKERT,
Petitioner–Appellant,

v.

Robert TANSY, Frankie Sue Del Papa
and Ron Angelone,*
Respondents–Appellees.

No. 89–16478.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1991.

Decided June 17, 1991.

---

* Robert Tansy, Frankies Sue Del Papa and Ron Angelone are substituted for their predecessors

George Sullivan and Brian McKay.

David D. Nelson, Legal Intern, University of Idaho College of Law, Moscow, Idaho, for petitioner-appellant.

David Sarnowski and Karen M. Wright, Deputy Atty. Gen., Las Vegas, Nev., for respondents-appellees.

Before TANG, SKOPIL and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Edward D. Eckert, a state prisoner, appeals from the district court's denial of his habeas corpus petition filed under 28 U.S.C. § 2254. Eckert contends the exclusion of alibi testimony during his state court trial violated his sixth amendment right to present a defense; that his trial counsel's failure to comply with Nevada's notice of alibi statute denied him effective assistance of counsel; and that the state court's imposition of two consecutive life sentences constitutes cruel and unusual punishment.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

## FACTS

On June 7, 1976, the Royal Inn Casino in Las Vegas was robbed. Earlier that evening, Victor Trapani, a former employee of the casino, accompanied by a man disguised and armed with a gun, had entered the home of Michael Gaughan, owner of the casino. Upon learning that no one present in the home knew the combination to the casino's inner safe, the armed intruder ordered Gaughan's wife to telephone a casino employee and fabricate a reason for him to get over to the house quickly. Mrs. Gaughan called and two employees arrived soon after. While Trapani bound one of the employees, the armed intruder held his gun to the other's head and again demanded the safe's combination. Realizing the employees did not know the combination, the armed intruder ordered one of them to go with Trapani to the casino and bring back $125,000. The armed intruder threatened to kill the other victims if his orders were not carried out. Trapani and the employee went to the casino and returned with $53,000. The intruder took the money and left.

Eckert was later identified as the armed intruder. He was convicted by a jury of four counts of first-degree kidnapping, one count of robbery, and one count of extortion. A weapon enhancement charge was included in each count for use of a deadly weapon during the commission of the crimes. Eckert was given eight life sentences, six of which were suspended, and two fifteen-year sentences. He was also given two ten-year sentences, both of which were suspended. On the suspended sentences, Eckert was given five years probation to commence upon his release from prison. Each of the sentences was to run consecutively.

## DISCUSSION

### A. Compulsory Process

■ Eckert's trial lasted five days. On the fourth day, after the prosecution had rested, Eckert sought to present the testimony of what he claimed to be an alibi witness. The trial court refused to allow this testimony, because Eckert had not complied with Nevada's notice of alibi statute. The statute requires a criminal defendant planning to introduce alibi testimony to give the prosecution notice of the proposed testimony at least ten days before trial.[1]

Preclusion of an alibi witness' testimony may be a permissible sanction for a discovery violation such as occurred in this case. *Taylor v. Illinois*, 484 U.S. 400, 409, 108 S.Ct. 646, 652, 98 L.Ed.2d 798 (1988). In *Taylor*, the Court stated that in making a determination as to whether a defendant's sixth amendment right to compulsory process was violated by the exclusion of alibi testimony, a court should balance a defendant's right to have witnesses testify in his or her behalf against "countervailing public interests." *Id.* at 414–15, 108 S.Ct. at 655–56. Such public interest considerations include "[t]he integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence; the interests in the fair and efficient administration of justice; and the potential prejudice to the truth determining function of the trial process...." *Id.* at 414–15, 108 S.Ct. at 655–56.[2] In addition, courts should consider the ease with which one can comply with the statute and whether failure to comply was willful and motivated by a desire to gain a tactical advantage at trial. *Id.* at

415, 108 S.Ct. at 655. The Court has also stated that the prosecution has an interest in "protecting itself against an eleventh hour defense." *Taylor* at 412, 108 S.Ct. at 654 (quoting *Williams v. Florida*, 399 U.S. 78, 81–82, 90 S.Ct. 1893, 1895–96, 26 L.Ed.2d 446 (1970)).

As we discuss in following Part B, the record shows Eckert dissuaded his attorney from giving the prosecution the required notice, because he wanted to contact the alibi witness himself. Not until the case was into its fourth day and the prosecution had rested, did the defense disclose the existence of the alibi witness. Then, when confronted with the violation of the notice of alibi statute, neither Eckert nor his attorney made any showing of cause for the failure to give the required notice. The trial court determined that to have permitted the testimony at that stage of the proceedings without compliance with the statute would have prejudiced the prosecution's case.

We conclude Eckert's constitutional rights were not violated by the state court's exclusion of the proffered alibi testimony. The notice of alibi statute could have been complied with by giving notice to the extent possible under the statute. *See* Nev.Rev.Stat. § 174.087 (1989). Compliance with the statute is possible by giving "the names and addresses of the witnesses by whom [the defendant] proposes to establish [his] alibi" by providing that information "as particularly as [is] known to the defendant or his attorney." *Id.* Thus, an incomplete notice may be given if some of the required information is unknown. *Id.* Here, no notice was given. The failure to give the notice is traceable directly to Eckert's tactical choice. He didn't want the

---

1. Nevada's notice of alibi statute provides in part:

 A defendant in a criminal case who intends to offer evidence of an alibi in his defense shall, not less than ten days before trial ... file and serve upon the district attorney a written notice of his intention to claim such alibi, which notice shall contain specific information as to the place at which the defendant claims to have been at the time of the alleged offense and, as particularly as are known to the defendant or his attorney, the names and ad-

 dresses of the witnesses by whom he proposes to establish such alibi.
 Nev.Rev.Stat. § 174.087 (1989).

2. The Supreme Court cited with approval the considerations set forth in *Fendler v. Goldsmith*, 728 F.2d 1181, 1188–90 (9th Cir.1983). *Fendler*, however, is distinguishable from the present case because in that case, the prosecution had notice of the defendant's desire to have witnesses testify but lacked only their addresses, facts which the court noted were readily attainable from the telephone directory. *Id.* at 1189.

notice given until he had contacted the witness.

Eckert's omission was willful and motivated by a desire to obtain a tactical advantage. Ecker easily could have complied with the requirements of Nevada's notice of alibi statute. Under these circumstances, the integrity of the adversary process, the interests in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process all support the trial court's rejection of the proffered alibi testimony. *See Taylor,* 484 U.S. at 414–15, 108 S.Ct. at 655–56.

## B. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel for purposes of a sixth amendment violation, a defendant must show he was denied "reasonably effective assistance," and as a result, he was prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Evans v. Lewis,* 855 F.2d 631, 636 (9th Cir.1988). The correct standard applied to a counsel's performance is one of "objective reasonableness," considering the totality of the circumstances. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65.

Eckert's ineffective assistance of counsel claim is based on his trial counsel's failure to comply with Nevada's notice of alibi statute. Eckert contends he gave his counsel sufficient information to permit compliance with the statute, but his attorney simply failed to give the notice which would have permitted the alibi witness to testify. The record belies this assertion. Eckert did not want his counsel to give the prosecution a timely notice of alibi. Instead, he wanted to locate and talk to his alibi witness before she was questioned by anyone else.

At the outset of his representation, Eckert told his trial counsel that a person by the name of "Jan" could give him an alibi. Eckert said Jan could testify that he had been with her at the time of the crime. His counsel informed Eckert that a notice of alibi would have to be given to the prosecution. Eckert told his attorney he doubted an investigator could locate Jan, but that he would try to find her himself. He said he was concerned that if Jan learned investigators were searching for her, she would not come forward.

Eckert was arrested June 12, 1976. His trial began October 7, 1977. Two weeks before the trial was to begin, Eckert informed his attorney that Jan's name was "Janice Zureck" or "Janice Jureck." During the week before trial, Eckert told his counsel that someone at the prison might be able to locate Jan. His counsel's staff then turned up the correct name as "Janice Zureck," and the Friday before trial, or the day trial was to commence, Janice Zureck contacted Eckert's counsel. After the trial was in its fourth day and the government had rested, the defense offered Zureck as an alibi witness.

Although the failure to give the notice of alibi deprived Eckert of his alleged alibi witness, we conclude Eckert has failed to establish his claim of ineffective representation. His counsel's performance, in light of Eckert's own conduct, was not constitutionally deficient.[3]

## C. Cruel and Unusual Punishment

Eckert contends the imposition of two consecutive life sentences for first-degree kidnapping constitutes cruel and unusual punishment in violation of the eighth amendment. Eckert's second life sentence was imposed as a result of his use of a weapon to commit the kidnappings.

---

**3.** The Nevada Supreme Court in Eckert's direct appeal commented in a footnote:

It is noteworthy that [Eckert] was previously charged and convicted of murder. Midway into that prior unrelated criminal trial, with the notice-of-alibi statute in force, [Eckert] apparently unsuccessfully made a similar and belated offer of proof as to an alibi witness. *See Eckert v. State,* 91 Nev. 183, 533 P.2d 468 (1975) (reversed on other grounds with alibi error not raised on appeal). The record shows that the prosecutor, during the offer of proof hearing in the instant case, commented as to the previous similar unsuccessful attempt to produce an alibi witness. *Eckert v. State,* 96 Nev. 96, 605 P.2d 617, 619 n. 2 (1980).

Nevada's weapon enhancement statute provides that anyone who uses a deadly weapon in the commission of a crime shall receive a state prison sentence "for a term equal to and in addition to the term of imprisonment prescribed by the statute for such crime." Nev.Rev.Stat. § 193.165 (1989). Nevada's first-degree kidnapping statute permits a sentence of life imprisonment with eligibility for parole beginning after five years under circumstances in which the victim suffered no substantial bodily harm as a result of the kidnapping. Nev.Rev.Stat. § 200.320 (1989). Under the applicable statutes, it appears Eckert will be eligible for parole on the kidnapping conviction and weapon enhancement in ten years.

■ To determine whether a sentence imposes cruel and unusual punishment, we consider whether the sentence is disproportionate to the crime committed. *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). The factors to be considered are: (1) the gravity of the crime and the harshness of the penalty, (2) comparison with sentences imposed for other crimes in the same jurisdiction, and (3) comparison with sentences imposed for the commission of the same crime in other jurisdictions. *Solem,* 463 U.S. at 290–92, 103 S.Ct. at 3009–11; *United States v. Wilkins,* 911 F.2d 337, 340 (9th Cir.1990).

■ No sentence is per se constitutional. *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009; *Cocio v. Bramlett,* 872 F.2d 889, 891–92 (9th Cir.1989). "[A] single day in prison may be unconstitutional in some circumstances." *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009. However, as a general rule, "the length of the sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980); *United States v. Brownlie,* 915 F.2d 527, 528 (9th Cir.1990).

1. *Gravity of the Offense and Severity of the Penalty*

■ When measuring the gravity of the offense, we consider the actual harm caused or threatened during the crime as well as the defendant's culpability in committing it. *Solem,* 463 U.S. at 292, 103 S.Ct. at 3010; *Cocio,* 872 F.2d at 892. In considering the degree of harm caused, we evaluate the nature of the crime; *i.e.,* whether it was violent or passive and whether it was directed at person or property. *Solem,* 463 U.S. at 292–93, 103 S.Ct. at 3010–11; *Cocio,* 872 F.2d at 892. Culpability may be properly measured by the defendant's motive. *Solem,* 463 U.S. at 293, 103 S.Ct. at 3011. These factors are then balanced against the severity of the sentence actually imposed on the defendant.

There can be no doubt that Eckert's crimes were "violent crime[s] directed at humans." *See Cocio,* 872 F.2d at 892. Eckert held four people at gunpoint while threatening them with their lives if his demands were not carried out, and at one point he actually held his gun to the head of one of the victims. Furthermore, Eckert's motive was solely pecuniary [robbery], and as such is particularly reprehensible. *See Solem,* 463 U.S. at 293–94, 103 S.Ct. at 3011–12 (suggesting that crimes committed for money may be viewed as more serious than those which are not).

In analyzing the severity of Eckert's punishment, we consider his opportunity for parole. *See Solem,* 463 U.S. at 297, 103 S.Ct. at 3013; *see also Rummel,* 445 U.S. at 280–81, 100 S.Ct. at 1142–43; *Alford v. Rolfs,* 867 F.2d 1216, 1223 (9th Cir.1989); *Cocio,* 872 F.2d at 893. In *Solem,* the Court considered life imprisonment an excessive punishment because of the nonviolent nature of the defendant's crime and the fact that he would never be eligible for parole. *Solem,* 463 U.S. at 297, 103 S.Ct. at 3013. In *Rummel,* on the other hand, the Court upheld a life sentence based upon the state's interest in protecting its residents from repeat felony offenders and the defendant had an opportunity for parole in twelve years. *Rummel,* 445 U.S. at 280–81, 100 S.Ct. at 1142–43. In the present case, Eckert will be eligible for parole on the first-degree kidnapping conviction and weapon-enhancement in ten years.

We conclude that the penalties Eckert faces are not excessively harsh relative to the gravity of the crimes of which he was convicted.[4]

### 2. Sentences Imposed on Other Criminals in the Same Jurisdiction

*Solem*'s second factor requires us to consider whether Eckert's punishment is excessive relative to other crimes in the same jurisdiction. *Solem*, 463 U.S. at 291, 103 S.Ct. at 3010. In so doing, we inquire as to whether criminals within Nevada who commit more serious crimes than first-degree kidnapping with a deadly weapon receive the same or less severe sentences than Eckert received. *Solem* suggests that the punishment may be disproportionate to the offense if other criminals who are convicted of more serious crimes receive the same or less severe sentences. *Id.*

Under Nevada law, a person could receive the same sentence as Eckert for the following crimes, each conditioned upon the use of a deadly weapon: murder; sexual assault; and involuntary servitude, purchase for sale of other person. *See* Nev. Rev.Stat. §§ 200.030; 200.366; 200.465 (1989). These crimes are more serious than kidnapping in the first degree, the crime for which Eckert was convicted and sentenced.

We conclude the length of Eckert's sentence is not excessive relative to the sentences which can be imposed on criminals convicted of more serious crimes in Nevada.

### 3. Sentences for Commission of the Same Crime in Other Jurisdictions

*Solem* finally requires that we consider the sentence Eckert would have received in other jurisdictions. *Solem*, 463 U.S. at 291–92, 103 S.Ct. at 3010–11.

Most states have weapon enhancement statutes; however, these statutes typically impose a definite prison term such as three, five or ten years, rather than a term "equal to and in addition to" the sentence required for the substantive crime as does Nevada's weapon enhancement statute. *See, e.g.,* Fla.Stat. § 775.087 (West 1976 & Supp. 1991) (reclassifying a first-degree felony conviction to a life felony, plus a three-year enhancement); Cal.Penal Code § 12022 (West 1982 and Supp.1991) (enhancing a felony conviction by one or three years); Haw.Rev.Stat.Ann. § 706.660.1 (Michie 1988 & Supp.1990) (imposing an enhanced sentence of ten years); Conn.Gen.Stat. § 53a–216 (1991) (imposing an enhancement of five years); Idaho Code § 19–2520 (Michie 1987 & Supp.1990) (imposing a fifteen-year enhancement); 42 Pa.Cons.Stat. Ann. § 9712 (Purdon 1982 & Supp.1990) (imposing a minimum five-year enhancement).

In some jurisdictions, weapon enhancement schemes provide for enhancements depending on the number of times the defendant has been convicted under the particular enhancement statute and on the type of weapon possessed. *See, e.g.,* 18 U.S.C. § 924(c)(1) (1988 and Supp.1991) (imposing an initial enhancement of five years; however, if the weapon possessed was a machine gun or similar device, an enhancement of thirty years; if the defendant is convicted under the statute a second time and if the weapon used was a machine gun or similar device, an enhancement of life without the possibility for parole.); Mont. Code Ann. § 45–8–303 (1990) (enhancing to twenty years for use of a machine gun).

Compared to other jurisdictions, Nevada's weapon enhancement statute is indeed harsh, but harshness alone does not render punishment cruel and unusual. In our

---

**4.** The magistrate concluded that the two consecutive life sentences did not constitute cruel and unusual punishment because Eckert conceded the imposition of one life sentence for the crime of first-degree kidnapping would not constitute cruel and unusual punishment. The magistrate reasoned that because Eckert could serve only one sentence for the duration of his life, the imposition of an additional life term had no

bearing on the issue of cruel and unusual punishment.

While this might be a reasonable analysis if consecutive life sentences were imposed without the possibility of parole, here Eckert has that possibility. Because of this, his two consecutive life sentences cannot be upheld simply by focusing on the constitutionality of the first life sentence.

analysis, we must consider that Nevada's state legislature is entitled to deference to its ability and power to prescribe sentences for persons convicted of crimes within its borders. *See Rummel*, 445 U.S. at 276, 100 S.Ct. at 1140; *Cocio*, 872 F.2d at 895 ("court lacks authority to act as a super legislative body dictating the policy considerations that may motivate a state in enhancing the punishment for a crime.").

Measuring Eckert's sentence by the standards of *Solem*, and according Nevada's legislature the deference it is due, we conclude that Eckert's sentence to two consecutive life terms is not cruel and unusual punishment under the Constitution.

### D. Double Jeopardy

 Eckert argues that his convictions for robbery and for extortion should have been merged for sentencing purposes. He contends that because these crimes involved one continuous event, one set of facts, and one criminal intent, it was inappropriate to impose multiple sentences. *See Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976). We disagree. Nevada's robbery statute requires the actual taking "by force, violence, or fear of injury" of another's property. Nev.Rev. Stat. § 200.380 (1989). Extortion, on the other hand, requires proof of either an indirect or a direct threat. Nev.Rev.Stat. § 205.320 (1989). Each offense requires proof of an additional fact which the other does not. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The two are separate crimes and separate sentences may be imposed for each violation. *Id.*[5]

### E. Extradition

 Eckert alleges he was illegally extradited from Kansas to Nevada. This allegation is meritless and was properly dismissed by the district court because "[t]here is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." *Tynan v. Eyman*, 371 F.2d 764, 766 (quoting *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952)). Eckert cannot be granted habeas corpus relief on the ground of illegal extradition. *Hunt v. Eyman*, 405 F.2d 384 (9th Cir. 1968), *cert. denied*, 394 U.S. 1020, 89 S.Ct. 1644, 23 L.Ed.2d 46 (1969).

AFFIRMED.

---

5. Eckert also argues all of his crimes of kidnapping and his robbery crime should have been merged into one offense for sentencing purposes. Eckert did not raise this issue in the district court. Generally, issues raised for the first time on appeal will not be considered absent a showing of exceptional circumstances. *United States v. Oregon*, 769 F.2d 1410, 1414 (9th Cir.1985). Eckert makes no showing of any exceptional circumstance to excuse his failure to raise this issue before now. We decline, therefore, to consider the issue in this appeal.