October 22, 1993

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

No. 93-1037

 THOMAS P. BOWLING,
 Plaintiff-Appellant,

 v.

 GEORGE A. VOSE, DIRECTOR OF
 THE DEPARTMENT OF CORRECTIONS,
 STATE OF RHODE ISLAND, ET AL.,
 Defendants-Appellees.

 

 ERRATA SHEET

 The opinion of this Court issued on September 10, 1993, is
amended as follows:

 Add to the end of footnote 2 on page 2 of the opinion:

 It is apparently the state's view that
 Inspector Byrne's estimate that the fire
 started thirty to forty-five minutes before
 discovery depended on the assumption that the
 fire did not start until 11:46. We see no
 basis for this assumption and think that, at
 the very least, the testimony is reasonably
 open to the interpretation that the fire had
 been started thirty to forty-five minutes
 before it was actually discovered.

 Add as a footnote on page 6 of the opinion following the
first sentence on that page after the word "testimony":

 The trial judge and the Rhode Island Supreme
 Court conducted the required weighing of
 factors elaborated in Taylor and concluded
 
 that the exclusion of the alibi evidence was
 an appropriate sanction. As the application
 of Taylor is a legal question, we review this
 
 ruling de novo and arrive at the opposite
 conclusion.

 Add as a footnote at the end of the first full paragraph on
page 7, after the word, "worst":

 The trial court not only failed to make any
 explicit finding of willful misconduct, see
 
 Bowling v. Vose, No. 91-0472, slip op. at 3
 
 (D.R.I. Nov. 13, 1992), it seemingly
 concluded to the contrary. In its
 exclusionary ruling, the court stated that it
 was "not persuaded that [offering an alibi
 witness] was the defendant's original
 intention . . . ." Without such an intent to
 violate the discovery rules, the fact that
 defense counsel later felt that an alibi
 witness should be called would not be
 indicative of bad faith or misconduct.

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 93-1037

 THOMAS P. BOWLING,

 Plaintiff-Appellant,

 v.

 GEORGE A. VOSE, DIRECTOR OF
 THE DEPARTMENT OF CORRECTIONS,
 STATE OF RHODE ISLAND, ET AL.,

 Defendants-Appellees.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Francis J. Boyle, U.S. District Judge]
 

 

 Before

 Torruella, Circuit Judge,
 

 Campbell, Senior Circuit Judge,
 

 Boudin, Circuit Judge.
 

 

 Paula Lynch Hardiman for appellant.
 
 Jane M. McSoley, Assistant Attorney General, Appellate
 
Division, with whom Jeffrey B. Pine, Attorney General, was on
 
brief for appellee State of Rhode Island.

 

 September 10, 1993
 

 TORRUELLA, Circuit Judge. In this habeas corpus
 

action, appellant was convicted of first-degree arson in Rhode

Island. He claims that the trial judge excluded an alibi witness

in violation of his Sixth Amendment rights, and we agree.

 In the prosecution's request for discovery information

prior to trial, the prosecution specified that the suspect fire

started between 11:00 p.m. and 12:00 a.m., on June 7, 1986, at

his apartment building in Pawtucket, Rhode Island. In complying

with the request appellant did not aver an alibi defense,

although Rhode Island Rule of Criminal Procedure 16 requires a

defendant to provide such notice within 21 days of receipt of the

state's demand.1 Appellant claims that he was unaware of any

alibi for that evening between 11:00 p.m. to 12:00 a.m.

Appellant prepared his defense accordingly. 

 At trial, the state presented the testimony of Donald

Byrne, a fire investigator. On cross-examination, he stated that

the fire actually started thirty to forty-five minutes before it

was discovered.2 Appellant's counsel then calculated that,

 

1 The rule provides that "upon demand by the attorney for the
State and delivery by him or her to the defendant of a written
statement describing with specificity the date and time when and
the place where the offense charged is alleged to have occurred,
the defendant, within twenty-one (21) days after receipt of such
demand and particulars, shall give written notification whether
he or she intends to rely in any way on the defense of alibi."
R.I. Sup. Ct. R. Crim. P. 16. 

2 Inspector Byrne believed that the fire was reported at
11:46 p.m., and testified as such. However, the Pawtucket Fire
Department reported that it was informed about the fire at
11:34 p.m. The latter report would seem to be the most
definitive evidence of the actual starting time. It is
apparently the state's view that Inspector Byrne's estimate that

 -2-

according to the inspector, the fire must have started between

10:49 and 11:04 p.m. This new time period obviously was somewhat

removed from the 11:00 p.m. to 12:00 a.m. period that counsel had

previously focused on in preparing the defense.

 The revised time window suggested a new defense.

Counsel remembered an affidavit, supplied during discovery by the

state, from appellant's common-law wife, Doris Palmieri.3 Ms.

Palmieri stated that appellant had picked her and her sister up

at a club in Providence sometime after ten o'clock. Because a

witness placed appellant at the building at 10:34 p.m., and

others saw him there before then, counsel inferred that he did

not leave to pick up his wife until after approximately half past

ten.

 Counsel then tracked down Ms. Palmieri's sister,

Jenette Fagundes, and learned that after picking up the sisters

at the club, appellant drove her home before returning to

Pawtucket. Counsel determined that appellant could not leave

Pawtucket after 10:34 p.m., drive to the club in Providence, take

Ms. Fagundes to her home in Providence, and return to Pawtucket

in time to start the fire by 11:04 p.m. Appellant therefore

could not have burned down the building. 

 

the fire started thirty to forty-five minutes before discovery
depended on the assumption that the fire did not start until
11:46. We se no basis for this assumption and think that, at the
very least, the testimony is reasonably open to the
interpretation that the fire had been started thirty to forty-
five minutes before it was actually discovered.

3 Ms. Palmieri passed away shortly after the fire, of causes
unrelated to the fire. 

 -3-

 After the state closed its evidence, and five days

after the fire inspector testified, counsel petitioned the court

to allow Ms. Fagundes to testify. He stated that he did not

recognize the relevance of her story until the fire inspector

testified about when the fire started. Furthermore, he did not

learn Ms. Fagundes' name or address until two days later. The

state responded that it would not oppose the motion if it could

introduce Ms. Palmieri's statement, which contained incriminating

facts, in full as rebuttal. In it, Ms. Palmieri revealed that

upon arriving at the apartment building, appellant told her that

she should sleep elsewhere.

 The trial judge took a recess to ponder the matter and

ultimately decided to exclude Ms. Fagundes' testimony. The judge

noted that appellant had the Palmieri statement well before the

trial, and that it sufficiently raised the possibility of the

alibi. Because Rule 16 imposed an affirmative duty on appellant

to disclose reliance on an alibi, even if the name of the witness

was unknown, the judge found that appellant had violated

discovery. The judge excluded the alibi testimony as a sanction

under Taylor v. Illinois, 484 U.S. 400 (1988). The judge
 

determined that defendant "seized upon this tact having heard the

state's entire case and the state rested," and cited the need to

ensure the "orderly administration of justice." 

 In contrast to the proffered alibi, the inculpatory

evidence at trial was substantial. Two eyewitnesses saw

appellant in the vicinity of the fire overcome by smoke; one saw

 -4-

him running from the building. Another eyewitness saw appellant

throwing lighted paper into a vent leading to the first floor of

the building. Witnesses testified that appellant threatened the

building's owners shortly before the fire. Another witness

apparently testified that appellant had warned the witness to

leave the building. Swayed by this evidence, the jury rendered a

guilty verdict and appellant received a 25 year sentence.

 Appellant bases his argument on the Sixth Amendment,

which states: "In all criminal prosecutions, the accused shall

enjoy the right . . . to have compulsory process for obtaining

witnesses in his favor." Of course, the "right to compel a

witness' presence in the courtroom" would be meaningless "if it

did not embrace the right to have the witness' testimony heard by

the trier of fact." Taylor, 484 U.S. at 409. Exercise of the
 

right thus assists the adversary process in its truth-seeking

function by ensuring that the trial court hears the full array of

admissible facts pertinent to the case. The Court in Taylor
 

noted that "few rights are more fundamental than that of an

accused to present witnesses in his own defense." Id. at 408.
 

 It is not an absolute right, however. Given the

demands of the adversary system, the Court in Taylor found that a
 

trial court may exclude a defense witness without trampling on

the Sixth Amendment. The Court issued no hard test; rather, it

listed various considerations that a judge could use as a guide.

These include the "integrity of the adversary process, which

depends both on the presentation of reliable evidence and the

 -5-

rejection of unreliable evidence, the interest in the fair and

efficient administration of justice, and the potential prejudice

to the truth-determining function of the trial process." Id. at
 

414-15. If these concerns outweigh the defendant's interest in

presenting witnesses, the trial court can properly exclude the

testimony4.

 Courts thus have upheld the exclusion of a witness when

a party willfully violates the discovery rules to gain a tactical

advantage in litigation. In Taylor, for instance, it was "plain
 

that the case fit[] into the category of willful misconduct in

which the severest sanction is appropriate." Id. at 417. The
 

proposed testimony appeared to be fabricated -- "witnesses [were]

being found that really weren't there." Id. In Michigan v.
 

Lucas, 111 S. Ct. 1743, 1748 (1991), the Court explained its
 

earlier holding: "We did not hold in Taylor that preclusion is
 

permissible every time a discovery rule is violated. Rather, we

acknowledged that alternative sanctions would be 'adequate and

appropriate in most cases'" (quoting Taylor, 484 U.S. at 414).
 

The Court in Lucas justified the imposition of the severest
 

sanction of exclusion in Taylor by noting the willful character
 

of the discovery violation.

 Indeed, most circuit court cases affirming exclusion in

 

4 The trial judge and the Rhode Island Supreme Court conducted
the required weighing of factors elaborated in Taylor and
 
concluded that the exclusion of the alibi evidence was an
appropriate sanction. As the application of Taylor is a legal
 
question, we review this ruling de novo and arrive at the
opposite conclusion.

 -6-

response to discovery violations involve willful conduct. See
 

United States v. Johnson, 970 F.2d 907, 911 (D.C. Cir. 1992);
 

United States v. Mitan, 966 F.2d 1165, 1175 (7th Cir. 1992);
 

Horton v. Zant, 941 F.2d 1449, 1467 (11th Cir. 1991); United
 

States v. Peters, 937 F.2d 1422, 1426 (9th Cir. 1991); Eckert v.
 

Tansy, 936 F.2d 444 (9th Cir. 1991); Escalera v. Coombe, 852 F.2d
 

45, 48 (2d Cir. 1988); Chappee v. Vose, 843 F.2d 25 (1st Cir.
 

1988). The Ninth Circuit has even interpreted Taylor to mean
 

that exclusion is permissible only when the case involves

misconduct. Peters, 937 F.2d at 1426.
 

 In this case, there was no such misconduct. Appellant

did not, and could not, learn that the fire was set between 10:49

to 11:04 p.m., until the fire inspector was cross-examined at

trial. Appellant proceeded on the theory that 11:00 p.m. to

12:00 a.m. was the relevant time period simply because the

government suggested that it was the relevant time period.5

While counsel could have learned about appellant's travels on the

night in question with some ease from the Palmieri statement, we

view counsel's ultimate failure as negligence at worst6.

 

5 The reporter's notes appended to Rule 16 recognize the
significance of the state-provided time of offense. "Unless
defendant is given specific information about the time and place
of the offense, his ability to predict whether or through whom he
will raise the defense of alibi may be impaired." Sup. Ct. R.
Crim. P. 16 reporter's notes to 1974 amendment.

6 The trial court not only failed to make any explicit finding
of willful misconduct, see Bowling v. Vose, No. 91-0472, slip op.
 
at 3 (D.R.I. Nov. 13, 1992), it seemingly concluded to the
contrary. In its exclusionary ruling, the court stated that it
was "not persuaded that [offering an alibi witness] was the
defendant's original intention . . . ." Without such an intent

 -7-

 In this circumstance, it is obvious that concerns

related to the integrity of the trial process do not weigh in

favor of exclusion. Indeed, exclusion of an exculpatory and

potentially reliable alibi would distort the truth-seeking

function of trial. The proposed testimony does not threaten to

pollute the trial with unreliable evidence; it corroborates a

written statement that the prosecution itself was content to use.

The fact that no willful misconduct prevented timely disclosure

of the alibi also allays fears of fabrication and untruthfulness.

 The prosecution could have received a continuance to

investigate the alibi and cross-examine Ms. Fagundes about the

night in question. Furthermore, the proposed testimony was not

particularly scientific or technical in nature, which could have

imposed a hardship on the government in preparing a cross-

examination on short notice. Given the unintentional nature of

the violation in this case, we see no threat to the trial process

as a whole.

 Undoubtedly the interest in the fair and efficient

administration of justice is burdened by the introduction of a

new defense theory after the government has closed its evidence.

Alternative remedies exist, however, which adequately and

appropriately address fairness and efficiency. Rhode Island Rule

16 does not limit trial judges to exclusion as the only sanction

for a violation of its discovery rules. It lists less severe

 

to violate the discovery rules, the fact that defense counsel
later felt that an alibi witness should be called would not be
indicative of bad faith or misconduct.

 -8-

remedies such as requiring the offending party to reveal the

discovery or inspection, granting a continuance, or entering

"such other order as it deems appropriate." R.I. Sup. Ct. R.

Crim. P. 16(i). 

 Given the important nature of the proposed testimony to

the defendant, and the nonwillful character of the offense, we

find that concerns over fairness and efficiency are not

sufficiently weighty to justify the denial of appellant's Sixth

Amendment rights. Indeed, the trial court's concern over

fairness and efficiency seems less credible when the prosecution

itself was willing to have the evidence admitted. This is one of

those cases in which a less severe sanction than exclusion of a

witness was "adequate and appropriate." Taylor, 484 U.S. at 414.
 

 Although we have found that error of constitutional

magnitude infected this case, our analysis is not over. Before a

writ of habeas corpus may issue, that error must have been

sufficiently prejudicial to defendant's rights to warrant habeas

relief. As the Supreme Court has framed the inquiry, the error

must have "had substantial or injurious effect or influence in

determining the jury's verdict." Brecht v. Ahmanson, 113 S. Ct.
 

1710, 1714 (1993) (citing Kotteakos v. United States, 328 U.S.
 

750, 776 (1946)). As this standard is "grounded in the federal

harmless-error rule (28 U.S.C. 2111), federal courts may turn

to an existing body of case law in applying it." Id. at 1722.
 

 On the record we have before us, we cannot make a

sufficiently appropriate determination on whether the Taylor
 

 -9-

violation in this case meets this standard. The district court

is in a better position to evaluate this issue in the first

instance, as the inquiry entails a determination of the exact

nature and force of Ms. Fagundes' proposed testimony and an

effort to place her testimony within the context of the evidence

as a whole. In short, the weight of her testimony must be

balanced against the weight of the inculpatory evidence in this

case, which is substantial.

 We therefore remand the case to the district court for
 

a determination of this issue. The district court should hold

such hearings as necessary.

 -10-